**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| THE GOODYEAR TIRE & RUBBER CO., | ) CASE NO. 5:10cv1642 |
| Plaintiff, | ) JUDGE JOHN R. ADAMS |
| v. | ) <u>ORDER</u> |
| COMMODITY EXPRESS LEASING AND SALES, INC. F/K/A COMMODITY EXPRESS TRANSPORTATION, INC., et al., | ) |
| Defendant. | ) |

This matter came before the Court on Plaintiff's Combined Motion for Summary Judgment and Motion for Default Judgment (Doc. 41).  For the reasons set forth below, Plaintiff's Motion for Summary Judgment is GRANTED.  Plaintiff's Motion for Default will be addressed in a subsequent Order.

## I.  PROCEDURAL HISTORY

On July 27, 2010, The Goodyear Tire & Rubber Co. ("Goodyear") filed suit against Commodity Express Leasing and Sales, Inc. f/k/a Commodity Express Transportation, Inc. ("CET-SC") for breach of contract, action on account, and unjust enrichment (Doc. 1). CET-SC answered the Complaint on August 16, 2010 (Doc. 5). On November 8, 2010, Goodyear filed an Amended Complaint for breach of contract, action on account, and unjust enrichment against CET-SC (Doc. 12). Goodyear also asserted claims against new party defendants Commodity Express Transportation, Inc., a

Delaware corporation ("CET-DE"); NuState Energy Holdings, Inc. ("NuState"); and Power2Ship Holdings, Inc. ("Power2Ship") (Doc. 12).  CET-SC answered Goodyear's Amended Complaint on November 12, 2010 (Doc. 13).

On March 11, 2011, Goodyear moved this Court to enter judgment as a matter of law against CET-SC on its First Claim for Relief (Breach of Contract) and Second Claim for Relief (Action on Account) alleged in the Amended Complaint. The parties submitted stipulated facts (Doc. 42) and exhibits (Doc. 42-1 and 42-2) and have fully briefed the issue before the Court.

## II.   FACTS

Goodyear and CET-SC have stipulated to the following facts (Doc. 42) (sic throughout):

> 1.   Plaintiff The Goodyear Tire & Rubber Co. ("Goodyear") is an Ohio corporation that is headquartered at 1144 East Market Street, Akron, Ohio 44316.
>
> 2.   Defendant Commodity Express Leasing and Sales, Inc. f/k/a Commodity Express Transportation, Inc., a South Carolina corporation ("CET-SC") that is headquartered at 210 Bray Park Road, West Columbia, South Carolina 29172.
>
> 3.   Effective as of November 1, 2004, Goodyear entered into a leasing agreement, styled as a Memorandum of Agreement and a Letter Agreement (collectively, the "Mileage Agreement"), with CET-SC whereby Goodyear agreed to lease tires to CET-SC. A true and accurate copy of the Mileage Agreement is attached hereto as Exhibit A.
>
> 4.   Under the terms of the Mileage Agreement, CET-SC agreed to keep an accurate record of the total number of miles run by each vehicle and to submit a report to Goodyear of the total mileage at regular intervals. CET-SC agreed to pay Goodyear for the mileage run on the leased tires during the month immediately preceding "at the effective rate per tire mile" established by the Mileage Agreement.

5. Goodyear also entered into an account arrangement ("National Account") with CET-SC whereby CET-SC was able to have its vehicles serviced on account by Goodyear's authorized dealers.

6. In March 2005, CET-SC sold its business assets to Commodity Express Transportation, Inc., a Delaware corporation ("CET-DE") pursuant to an agreement styled as a "Mutual Agreement" dated as of March 21, 2005 (the "Mutual Agreement"). The parties to the Mutual Agreement included, but were not limited to, CET-SC, CET-DE, NuState Energy Holdings, Inc., f/k/a Power2Ship, Inc., a Nevada corporation ("NuState"), and Power2Ship Holdings, Inc., a Florida corporation ("P2S Holdings"). A true and accurate copy of the Mutual Agreement is attached hereto as Exhibit B.

7. CET-SC, CET-DE, and either NuState or P2S Holdings entered into an agreement styled as an "Equipment Lease Agreement" (the "Lease Agreement") whereby CET-DE and either NuState or P2S Holdings agreed to "assume all responsibilities, including payment of all sums due" to Goodyear by CET-SC pursuant to the Mileage Agreement. Lease Agreement at ¶12. A true and accurate copy of the Lease Agreement is attached as Exhibit C. Goodyear did not execute, acknowledge, or approve the terms of the Lease Agreement in writing.

8. Beginning on March 21, 2005, CET-DE operated the business previously owned by CET-SC out of the same facility with the same name as CET-SC had previously operated and used. The business continued to be managed, pursuant to an employment contract with CETDE, by the same individual who was the principal owner of CET-SC, Al Stokes ("Stokes"), and who had also operated CET-SC's business prior to March 21, 2005.

9. Defendant CET-SC's principal owner, Stokes, recalls speaking to Goodyear's Regional Sales Manager, Stan Hoffman ("Hoffman"), prior to the March 2005 transaction with CET-DE and believes he advised Hoffman that he was selling his company. Stokes contends and would testify that he believed Goodyear approved this transaction and that Hoffman understood that CET-DE would take over the Mileage Agreement with Goodyear.

10. Hoffman has no specific recollection of any discussion with Stokes about the sale of CET-SC's business or the assignment of the Mileage Agreement. Hoffman would also testify that in the event a Goodyear dealer sold its business, it was established protocol for Goodyear to require that the new buyer submit an application to become a Goodyear dealer, be approved by Goodyear as a dealer, and obtain appropriate credit

3

approval before it would be allowed to enter into its own Mileage Agreement with Goodyear.

11.     Steve Adkins ("Adkins"), Goodyear's area supervisor responsible for the CET-SC account under Hoffman in late 2004 and early 2005 also does not recall any discussion with Stokes about the sale of CET-SC's business or the assignment of the Mileage Agreement. In late 2005, Hoffman retired from Goodyear and Adkins was promoted to fill Hoffman's position as Regional Sales Manager.

12.     After March 2005, Goodyear continued to perform under the terms of the Mileage Agreement and National Account by providing tires and services to the business operated under the name Commodity Express Transportation, Inc. that continued to operate at 210 Bray Park Road, West Columbia, South Carolina 29172 (the "Premises").

13.     After March 2005, Goodyear received checks paying off amounts due for tire usage that occurred both before and after the date CET-SC sold its business to CET-DE. The payments for pre-closing mileage were from a different bank account than the payments for postclosing mileage. However, both types of checks bore the name of "Commodity Express Transportation, Inc." with the printed address of "210 Bray Park Road, W. Columbia, South Carolina 29172." Authentic copies of examples of these checks are attached hereto as Exhibit D (pre-closing from CET-SC) and Exhibit E (post-closing from CET-DE).

14.     Thereafter, the business operating at the Premises received statements of account and invoices addressed to "Commodity Express Transportation, Inc." that were issued by Goodyear for the tires and services it provided pursuant to the Mileage Agreement and National Account. The business, then owned by CET-DE and managed by Stokes (until March 2008), accepted delivery of products and services, paid many invoices to Goodyear over a period of years, and responded to routine requests for credit verification information requested by Goodyear.

15.     Neither CET-DE nor CET-SC, has paid Goodyear in full for all amounts due under the Mileage Agreement. On December 22, 2008, Goodyear sent a letter to Commodity Express at the Premises, notifying it that payment must be received within thirty (30) days or Goodyear would terminate the Mileage Agreement and issue a closeout billing for the value of the estimated remaining life of all consigned tires. A true and accurate copy of the Tire Lease Contract Termination Notice is attached as Exhibit F. Neither CET-SC nor CET-DE cured the default within the thirty (30) day period and on March 3, 2009, Goodyear issued a closeout billing invoice, charging Commodity Express Transportation, Inc. (without distinguishing CETDE from CET-SC) for the unused mileage on each

4

>remaining consigned tire pursuant to paragraph 14 of the Mileage Agreement, along with all unpaid amounts due for tire mileage previously reported by the Commodity Express business and invoiced by Goodyear.
>
>16. Neither CET-SC nor CET-DE paid Goodyear pursuant to the terms of the Mileage Agreement for the leased tires and for the closeout billing. The amount owed to Goodyear totals $541,793.19. A true and accurate copy of the Mileage Agreement Account Statement is attached hereto as Exhibit G.
>
>17. The business known as Commodity Express also had its vehicles serviced on account by Goodyear authorized dealers, but failed to pay Goodyear all sums due under the National Account and currently owes Goodyear $11,918.81 for service-related charges. A true and accurate copy of the National Account Statement is attached hereto as Exhibit H.

(Exhibits available at Doc. 42-1 and 42-2). In response to Goodyear's Motion for Summary Judgment, CET-SC provided an affidavit from W.A. Stokes, the owner and president of CET-SC during the periods relevant to Goodyear's claims for relief (Doc. 43-1). In addition to the stipulated facts, Mr. Stokes stated that:

- Until sometime in 2005, his main contact at Goodyear was its regional sales manager, Stan Hoffman (Doc. 43-1, ¶5);

- Prior to CET-SC selling its assets in March of 2005, Stokes had at least one conversation with Stan Hoffman, informing Mr. Hoffman that he was selling CET-SC to a group of investors (Doc. 43-1, ¶9);

- Stokes discussed with Mr. Hoffman that the new ownership group would be taking over the lease with Goodyear (Doc. 43-1, ¶10); and

- Stokes believed that, through his conversation with Mr. Hoffman, Goodyear approved the transfer of the lease obligation from CET-SC to CET-DE (Doc. 43-1, ¶10).

### III. SUMMARY JUDGMENT STANDARD

Effective December 1, 2010, Rule 56 of the Federal Rules of Civil Procedure, addressing Summary Judgment, provides in relevant part as follows:

> **(a)** **Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n.*, 909 F.2d 941, 943-44 (6th Cir.1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Harrow Products, Inc. v. Liberty Mutual Ins. Co.*, 64 F3d 1015, 1019 (6th Cir.1995).  The "mere possibility" of a factual dispute is insufficient grounds for denying a motion for summary judgment. *Id*. (citing *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir.1992)).

## IV. LAW AND ANALYSIS

### A. Breach of Contract

To prove a breach of contract under Ohio law, four elements must be established: (a) the existence of a contract, (b) performance by the plaintiff, (c) breach by the defendant, and (d) damage or loss to the plaintiff. *See Thomas v. Publrs. Clearing House, Inc.*, 29 Fed. App'x 319, 322 (6th Cir.2002) (citing *Doner v. Snapp*, 98 Ohio App.3d 597, 649 N.E.2d 42 (Ohio Ct.App. 2nd Dist.1994)). Here, there is no dispute that Goodyear and CET-SC entered into a Memorandum of Agreement (Doc. 42-1, Exhibit A, hereinafter "the Agreement") nor that Goodyear performed pursuant to that agreement. CET-SC argues, however, that it did not breach the Agreement because it was not obligated to pay Goodyear since CET-SC had assigned its payment obligations under the Agreement to CET-DE.

> 1. *Paragraph 15 of the Agreement requires written consent to modify, assign, or alter the Agreement.*

Paragraph 15 of the Agreement reads:

> This Agreement cannot be altered, modified or assigned in any respect unless by written consent of both parties or by special written document signed in like manner.

Doc. 42-1, page 7. Pursuant to the unambiguous terms of the Agreement, in order for CET-SC to assign, alter, or modify its terms, CET-SC needed to obtain written consent from Goodyear. There is no dispute that Goodyear did not provide written consent allowing CET-SC to assign its obligations under the Agreement. Thus, absent a waiver by Goodyear of the no-oral modification clause, no assignment of obligations occurred.

Under Ohio law, provisions preventing oral modification of an agreement are waived if: 1) an oral modification is acted upon by the parties; and 2) refusal to enforce

7

the oral modification would result in fraud or injury to the promisee, i.e. detrimental reliance. *Software Clearing House, Inc. v. Intrak, Inc.* (1990), 66 Ohio App.3d 163, 171, 583 N.E.2d 1056. "[A] party seeking to establish waiver bears a heavy burden of proof." *Pottschmidt v. Klosterman*, 169 Ohio App.3d 824, 833, 865 N.E.2d 111 (2006). Where it is difficult to determine whether a particular act sheds light on the meaning of the agreement or represents a waiver, the general preference would favor the "waiver" approach. R.C. §1302.11, Official Comment 3.

Here, Mr. Stokes, the president and owner of CET-SC, testified that he had a conversation with a Goodyear representative, Mr. Hoffman, during which he believes he informed Mr. Hoffman that he was selling CET-SC to CET-DE. CET-SC also argues that Mr. Hoffman "understood that CET-[DE] was taking over these lease obligations under the [Agreement]." Doc. 43, page 6. CET-SC further argues that Goodyear waived the non-oral modification clause because Goodyear continued performing under the Agreement after the supposed "assignment" from CET-SC to CET-DE and because CET-DE paid Goodyear out of a different bank account than CET-SC had used.

The Court finds that CET-SC has not met its burden of proof to establish that Goodyear waived the no-oral modification clause in the Agreement. Taking into consideration the stipulated facts and the facts presented by CET-SC in Mr. Stokes' affidavit, no reasonable jury could find that Goodyear waived the no-oral modification provision. CET-DE continued to do business in the same location, operated under the same name, and employed the same essential employee as CET-SC had. There is no discernable difference between the checks used by CET-DE to pay Goodyear and the checks previously used by CET-SC to pay Goodyear. Mr. Stokes was the main person of

contact while Goodyear did business with CET-SC, and he remained the main person of contact when CET-SC was purchased by CET-DE. Moreover, CET-DE took the name "Commodity Express Transportation, Inc.," thereby making it appear that there was no change in ownership of the company. Accordingly, CET-SC has not proved by clear and convincing evidence that the parties acted on the supposed oral modification nor that refusal to enforce the oral modification will result in fraud or injury to CET-SC.

The Court finds, therefore, that there is no question of material fact that Goodyear did not waive the no-oral modification clause in the Agreement. As such, CET-SC breached the Agreement by failing to pay Goodyear pursuant to the terms of the Agreement.

> 2. *Even if Goodyear waived the no-oral modification clause, CET-SC remains liable since the assignment to CET-DE did not create a new contract with new consideration.*

Regardless of whether Goodyear waived the no-oral modification clause, CET-SC remained liable for payments to Goodyear under the Agreement even after CET-SC assigned its obligations to CET-DE. Generally, a mere assignment does not release the assignor from its obligations to the other party under the assigned contract. *Gholson v. Savin*, 31 N.E.2d 858, 862 (Ohio 1941); *Litton ABS v. Red-Yellow Cab Co.*, 411 N.E.2d 808, 810, 64 Ohio App.2d 111, 113 (1978) (citing *American National Co. v. Thompson Spot Welder Co*, 30 Ohio App. 156, 164 N.E. 435 (1928)). If the obligor seeks damages or restitution it must go directly against the assignor unless the assignee specifically assumes the obligations. Even if an assignee assumes the obligations of the contract, the assignor remains secondarily liable as a surety, unless there is an agreement between the obligor and assignor not to hold the assignor liable upon the assignee's default. *Gholson*

*v. Savin*, 31 N.E.2d at 862. Thus, the assignor remains liable to the obligor for the assignee's defective performance, just as the assignor would be liable for its own defective performance.

Assuming, without so finding, that CET-SC assigned its obligations of the Agreement to CET-DE, CET-SC remains liable to Goodyear in the event of CET-DE's default. Goodyear was not a party to the "Equipment Lease Agreement" between CET-SC and CET-DE. Doc. 42-1, Exhibit C. There is no evidence of any other agreement between Goodyear and CET-SC in which Goodyear agreed not to hold CET-SC liable upon CET-DE's default. Additionally, there is no evidence of an agreement in which CET-SC's obligation to Goodyear under the Agreement has been extinguished by a new contract between Goodyear and CET-DE.

Accordingly, even if CET-SC assigned its rights and obligations under the Agreement to CET-DE, CET-SC remains liable to Goodyear in the event of CET-DE's default.

> 3. *Goodyear has been damaged by CET-SC's breach of the Agreement in the amount of $541,793.19.*

The Court finds that Goodyear is entitled to recover the principal balance of $541,793.19, plus prejudgment interest at the statutory rate from March 3, 2009, and post-judgment interest from the date of this entry.

B. Action on Account

Goodyear also seeks judgment on its claim for an action on account in the amount of $553,712.00 for the unused mileage on each remaining consigned tire, all unpaid due amounts for tire mileage previously reported, and for goods and services provided to CET-SC's vehicles by Goodyear's authorized dealers.

10

Under Ohio law, "an action on an account is appropriate where the parties have conducted a series of transactions, for which a balance remains to be paid." *Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 604 (6th Cir.2005) (quoting *AMF, Inc. v. Mravec*, 2 Ohio App.3d 29, 440 N.E.2d 600, paragraph 1 of the syllabus (Ct. App. Ohio 1981)). An action on account cause of action "exists to avoid the multiplicity of suits necessary if each transaction between the parties (or item on the account) would be construed as constituting a separate cause of action." *Am. Sec. Serv., Inc. v. Baumann*, 32 Ohio App.2d 237, 289 N.E.2d 373, 377 (1972)).

In order to succeed in an action on an account, the plaintiff must "prove both all the elements of the contract and that the contract is one that involves transactions usually the subject of a book account." *Keeton*, 417 F.3d at 604(citing *Baumann*, 289 N.E.2d 373)., Goodyear provided copies of two close-out billing invoices as evidence of CET-SC's outstanding accounts: one in the amount of $541,793.19 (Doc. 12-3 & Doc. 42-2, Exhibit G), and one in the amount of $11,918.81 (Doc. 12-4 & Doc. 42-2, Exhibit H). There is no dispute that Goodyear and CET-SC were in a contractual relationship. CET-SC does not dispute that Goodyear is owed $541,793.19 for the unused mileage on each remaining consigned tire and the unpaid due amounts for tire mileage previously reported. CET-SC does not dispute that Goodyear is owed $11,918.81 for goods and services provided by Goodyear to CET-SC's vehicles. Also, CET-SC does not dispute that it was invoiced for these amounts. Therefore, Goodyear has established the first element for its action on account.

Having established that a contract existed, Goodyear must then establish an account, which must show four things: (1) the defendant's name; (2) a beginning balance,

preferably of zero but at least of some other provable sum; (3) an itemized list of credits and debits; and (4) a means of determining the calculation of the amount claimed to be owed. *Asset Acceptance Corp. v. Proctor*, 156 Ohio App.3d 60, 804 N.E.2d 975, 977 (2004) (quoting *Brown v. Columbus Stamping & Mfg. Co.*, 9 Ohio App.2d 123, 223 N.E.2d 373, 375 (1967)).

The two close-out invoices attached to Goodyear's Amended Complaint and its Motion for Summary Judgment list "Commodity Express Transportation, Inc." and "Commodity Express Transp Inc" as the customer's name and show the same address of 210 Bray Park RD in West Columbia, South Carolina. Both close-out invoices show detailed summaries of past due amounts and, when applicable, adjustments for payment. Both invoices show a sum total owed. The documents do not contain a beginning balance of zero, but the sum totals are easily calculable by totaling each of the past due amounts from the past due invoice entries on the summaries. Moreover, CET-SC does not dispute the amounts owed on either close-out invoice. Instead, CET-SC's only defense is that it assigned the Agreement to CET-DE. As set forth above, CET-SC's assignment defense fails as a matter of law.

Accordingly, the Court finds that Goodyear is entitled to judgment in its favor on its action on account in the amount of $553,712.00, plus prejudgment and post-judgment interest at the statutory rates.

C. Unjust Enrichment

"[U]nder Ohio law, the existence of a contract action generally excludes the opportunity to present the same case as a tort claim." *Wolfe v. Cont'l Cas. Co.*, 647 F.2d 705, 710 (6th Cir.1981). The rationale is clear: "[i]f a party could simply, by alleging that

12

a contracting party never intended to fulfill his promise, create a tortuous action in fraud, there would be no effective way of preventing almost every contract case from being converted to a tort for jurisdictional purposes." *Hertz Commercial Leasing Corp. v. LMC Data, Inc.*, 73 Misc.2d 1009, 1013, 343 N.Y.S.2d 689, 694 (N.Y.Civ.Ct.1973) (holding that a cause of action sounded in contract despite additional allegations of fraud and misrepresentation). As the Sixth Circuit explained:

> It is no tort to carry a feeling of malice toward a person; it is no tort to breach a contract, regardless of motive. A tort exists only if a party breaches a duty which he owes to another independently of the contract, that is, a duty which would exist even if no contract existed. However, when the promisee's injury consists merely of the loss of his bargain, no tort claim arises because the duty of the promisor to fulfill the term of the bargain arises only from the contract. The tort liability of parties to a contract arises from the breach of some positive legal duty imposed by law because of the relationship of the parties, rather than from a mere omission to perform a contract obligation.

*Battista v. Lebanon Trotting Ass'n*, 538 F.2d 111, 117 (6th Cir.1976) (citing *Bowman v. Goldsmith Bros. Co.*, 109 N.E.2d 556, (Ct.App.1953). Further, "Ohio law is clear that a plaintiff may not recover under the theory of unjust enrichment when an express contract covers the same subject." *Ebenisterie Beaubois Ltee v. Marous Brothers Constr., Inc.*, 2002 WL 32818011, at *6 (N.D.Ohio 2002) (citing *Ulmann v. May*, 147 Ohio St. 468, ¶ 4, 72 N.E.2d 63 of syllabus (1947)).

The Court need not reach Goodyear's claim against CET-SC premised on the alternative theory of unjust enrichment. This claim is completely dependent upon the allegations in its claims for breach of the contract and action on account. Although it would be unjust to allow CET-SC to retain the benefit conferred upon it by Goodyear,

13

there is no need to resort to a theory quasi-contract when the evidence of the account here establishes the contractual relationship between the parties.

The Court, therefore, DISMISSES the unjust enrichment claim against CET-SC.

### V.     CONCLUSION

Having reviewed this matter, the Court finds no genuine issue of material fact that Goodyear and CET-SC entered into a contract, that Goodyear performed its obligations under the contract, and that CET-SC did not pay for Goodyear's performance as obligated under the contract. Additionally, there is no genuine issue of material fact that Goodyear performed services and provided goods on account to CET-SC for which Goodyear has not received payment. CET-SC does not challenge Goodyear's core claim, but rather asserts a defense based on the theories that Goodyear waived the no-oral modification clause in the Agreement and assented to CET-SC's assignment of the Agreement to CET-DE. The Court finds no evidence by which a jury could conclude that Goodyear waived the no-oral modification clause or that Goodyear assented to the assignment. Even if the assignment was valid, however, CET-SC remains liable to Goodyear as a surety in the event of CET-DE's default.

For the foregoing reasons, the Court GRANTS summary judgment in favor of Goodyear against Defendant CET-SC on Goodyear's First Claim for Relief (Breach of Contract) and Second Claim for Relief (Action on Account). Doc. 12. Consequently, the Court orders that Defendant CET-SC pay Goodyear damages of $553,712.00, plus prejudgment and post-judgment interest at the statutory rates, and court costs.

The Court DISMISSES Goodyear's Third Claim for Relief (Unjust Enrichment) as it applies to CET-SC.

IT IS SO ORDERED.

  April 26, 2011             ____/s/ *Judge John R. Adams*_____
Date                                  JUDGE JOHN R. ADAMS
                                      UNITED STATES DISTRICT COURT

15